## CIVIL MINUTES – GENERAL    'O'   JS-6

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
|---|---|---|---|
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Matthew Rabban | Surekha Shepherd |

**Proceedings:**    DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS (Dkt. [ 32 ], filed on January 31, 2019)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt.
[ 33 ], filed on February 7, 2019)

## I.    INTRODUCTION

On June 18, 2018, plaintiff Payam Tavakoli filed this action against Los Angeles
Police Department ("LAPD") Officer Gilberto Alonso, LAPD Sergeant Cueto, LAPD
Lieutenant Barrientos, LAPD Watch Commander Lou Vince, LAPD Detective Barragan,
LAPD Officer Flores, and LAPD Chief of Police Charlie Beck.[1] Dkt. 1 ("Compl.").
Under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978),
plaintiff also sues the City of Los Angeles (the "City") and Chief Beck. Id. Plaintiff
alleges claims for (1) deprivation of civil rights, pursuant to Title 42 U.S.C. § 1983,
against the individual defendants; (2) deprivation of civil rights, pursuant to Title 42
U.S.C. § 1983, against the entity defendants; (3) malicious prosecution under the 14th
Amendment; (4) violation of California Civil Code § 52.1 (the "Bane Act"); and (5)
deprivation of liberty under the due process and equal protection clauses of the 14th
Amendment to the U.S. Constitution. See generally id. In brief, plaintiff claims that
defendants violated his constitutional rights by wrongfully prosecuting plaintiff for grand

---

[1]    Plaintiff's complaint does not include the first names of LAPD defendants Cueto,
Barrientos, Barragan, and Flores.

**CIVIL MINUTES – GENERAL**       **'O'   JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

theft auto, California Penal Code § 487(h), after police officers falsely arrested him and wrongfully failed to disclose exculpatory information.  <u>Id</u>.[2]

On January 31, 2019, defendants filed a motion for judgment on the pleadings with regard to (1) plaintiff's claims against defendant Beck, and (2) any claim which seeks relief based on defendants' alleged failure to turn over exculpatory information, in violation of <u>Brady v. Maryland</u>, 73 U.S. 383 (1963).  Dkt. 32 ("MJP").  On February 7, 2019, defendants filed a motion for summary judgment on all claims, dkt. 33 ("MSJ"), along with a statement of uncontroverted facts and conclusions of law, dkt. 37 ("SUF"), and supporting declarations, dkts. 34–36.  Defendants also filed a request for judicial notice of public documents filed in plaintiff's underlying criminal proceeding.  Dkt. 38 ("RJN").[3]  Plaintiff filed an opposition to defendants' motion for judgment on the pleadings on February 11, 2019.  Dkt. 41 ("OJP").  Plaintiff filed an opposition to defendants' motion for summary judgment on February 18, 2019, dkt. 45 ("OSJ"), along with a statement of disputed facts, dkt. 45-1 ("DSF"), and supporting exhibits.[4] Defendants filed a reply to their motion for judgment on the pleadings on February 14, 2019.  Dkt. 44 ("RJP").  On February 21, 2019, defendants also filed a reply in support of

---

[2]    In a declaration, defense counsel avers that she and plaintiff met and conferred multiple times in December 2018 and January 2019.  Dkt. 34, Declaration of Surekha Shepherd ("Shepherd Decl.") ¶¶ 2–7.  Pursuant to those meetings, defense counsel represents that, in an email, plaintiff agreed to dismiss all officer defendants except for Officer Alonso and Chief Beck.  <u>Id</u>. ¶ 7; <u>see</u> Dkt. 34-3, Ex. CC.  Defendants further represent that plaintiff agreed to dismiss his equal protection claim.  Shepherd Decl. ¶ 8; <u>see</u> Dkt. 34-5, Ex. EE ("Jan. 25 Email").  Although defendants represent that they provided plaintiff with a proposed stipulation for dismissal in January 2019, no stipulation has not been filed with this Court.  Shepherd Decl. ¶7.  Those claims remain operative for the purposes of this motion.

[3]    Defendants filed a request for judicial notice of the certified docket from plaintiff's underlying criminal case, Case No. BA456580, and portions of the Reporter's transcript from the preliminary hearing, which was held on August 9, 2019.  Dkt. 38.  The Court hereby **GRANTS** this request and takes judicial notice of the public and undisputed court files and record.  <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

[4]    Plaintiff initially failed to authenticate the evidentiary exhibits which he attached to his opposition brief.  With leave of Court, plaintiff filed a notice of errata, wherein plaintiff's attorney authenticated the exhibits he attached.  Dkt. 50.

CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

their motion for summary judgment.  Dkt. 49 ("RSJ").  At that time, defendants filed objections to 18 exhibits filed by plaintiff, as well.  Dkt. 48 ("OBJ").

The motion for judgment on the pleadings and the motion for summary judgment are currently before the Court.  However, because the motion for summary judgment addresses the same claims at issue in the motion for judgment on the pleadings, and because the parties have now submitted an evidentiary record in support of their positions for the motion for summary judgment, the Court reviews only the motion for summary judgment.[5]  With regard to the motion for summary judgment, the Court held a hearing on March 18, 2019.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background.  Unless otherwise noted, the court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

### A.     Plaintiff's Arrest for Grand Theft

On March 20, 2017, Aureliano Santiago reported to the Los Angeles Police Department that his truck, which is used to vend ice cream, was stolen.  Compl. ¶¶ 2, 15.  More specifically, Santiago reported that, sometime between 8:45 pm and 10:14 pm, he parked and locked his truck at 1419 West 11th Street in the City of Los Angeles on March 9, 2017.  Id. ¶ 13.  He later discovered that the vehicle was no longer parked at that location.  Id. ¶ 16.  Santiago had not given anyone permission to drive the vehicle.  Id. ¶ 17.

On March 20, 2017, Santiago obtained a video of the theft from a business across the street from where Santiago's truck was parked, and the video captured the theft as it took place.  ¶¶ 2, 19–21.  From viewing the video, Santiago told Officer Alonso that he recognized the perpetrator of the crime as plaintiff, whom Santiago referred to as "Paul."  Id. ¶¶ 2, 22.  Officer Alonso subsequently identified "Paul" as plaintiff, Payam Tavakoli.  Id. ¶ 3.  Santiago explained that he was familiar with plaintiff because they had had two interactions prior to the theft.  Id. ¶¶ 23–25.  At those times, plaintiff had told Santiago to stop vending ice cream near plaintiff's restaurant.  Id. ¶ 25.  Santiago allegedly

---

[5]      Accordingly, for the reasons set forth herein, the Court **DENIES** the motion for judgment on the pleadings as moot.

| | | | |
|---|---|---|---|
| **CIVIL MINUTES – GENERAL** | | **'O'   JS-6** | |
| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

recognized plaintiff's clothing in the video.  Id. ¶ 26.  Santiago also testified that he recognized the face of the man in the video.  Id. ¶ 27.[6]

After receiving this positive identification from Santiago, Officer Alonso also interviewed Gladys Aracely Virula regarding the suspect.  Id. ¶ 33.  Virula assists Santiago with selling ice cream from his truck.  OSJ at 8.  Alonso showed Virula a photographic line-up, which included plaintiff and five other defendants, to verify the identity of the male whom Santiago referred to as "Paul."  Id. ¶ 35.  Virula also reviewed the video, and she identified the perpetrator of the crime as plaintiff, as well.  Id. ¶ 34.

On April 2, 2017, plaintiff was arrested for violating California Penal Code § 487(h).  Id. ¶ 5.  Defendants did not obtain a warrant for this arrest,[7] but Officer Alonso believed there was probable cause to arrest plaintiff based on Santiago's identification of plaintiff.  Id. ¶ 4.  Plaintiff was released on bail at 2 a.m., the early morning of April 3, 2017.  OSJ at 9.  Officer Alonso then presented the case to the District Attorney.  Id. ¶ 8.  Officer Alonso neither threatened, attempted to threaten, coerced nor attempted to coerce the prosecutor who reviewed the case for filing consideration.  Id.  Officer Alonso also did not make any promises to the prosecutor in exchange for a decision to file charges against plaintiff.  Id.  The District Attorney filed charges against plaintiff on April 20, 2017.  Id. ¶ 9.

**B.     The Preliminary Hearing and Plaintiff's Motion to Dismiss**

At a preliminary hearing held on August 9, 2017, plaintiff was held to answer by the Los Angeles Superior Court, Commissioner Kristi Lousteau presiding.  Id. ¶ 12.  In advance of the preliminary hearing, plaintiff's then defense counsel reviewed the video in question with Commissioner Lousteau and the district attorney.  Id. ¶¶ 10–11, 39.  Santiago and Alonso both testified at the preliminary hearing.  Id. ¶¶ 26, 32.  Santiago testified to his familiarity with plaintiff, prior to the charged grand theft.  Id. ¶ 23.  He also testified as to why he recognized plaintiff in the video.  Id. ¶ 22.  Officer Alonso

---

[6]     Plaintiff disputes this fact because plaintiff contends that "movants fail to mention it would be impossible for anyone to recognize a person in the video."  DSF ¶ 27.  However, plaintiff's opinions regarding the integrity of the video do not controvert Santiago's statements about the video.

[7]     The fact that plaintiff was arrested without a warrant is not included in defendants' statement of undisputed facts, and plaintiff does not include evidence of this fact in its statement of disputed facts.  However, the parties appear to concede this fact in their moving papers.  MSJ at 17; OSJ at 9.

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

testified about investigating the crime, and about interviewing Santiago and Virula.  Id. ¶¶ 32–35.  Officer Alonso, who was not familiar with plaintiff prior to this investigation, testified that he could not identify plaintiff from the video, but that Santiago and Virula, both of whom had previously encountered plaintiff, independently identified plaintiff upon viewing the video.  Id. ¶¶ 22, 34, 36, 38.  These positive identifications formed the basis for why Officer Alonso believed he had probable cause to arrest.  Id.  ¶ 4, 34. Officer Alonso was unable to obtain a better quality video.  Id. ¶ 37.  At the preliminary hearing, plaintiff's then-defense counsel cross examined Santiago and Alonso.  Id. ¶ 35.

Commissioner Lousteau held plaintiff to answer on August 9, 2017 after finding that "there is sufficient cause to believe that the defendant, [Payam] Tavakoli, is guilty as charged."  Id. ¶ 12; Dkt. 38-2 ("Transc.") 21:20–20:22.

### C.   DNA Evidence

When LAPD recovered Santiago's vehicle, they employed swabs to collect what appeared to be blood on the vehicle.  Compl. ¶ 40.  Officer Alonso ordered DNA testing and obtained results.  Id.  The blood on the vehicle did not match plaintiff's DNA, [8] and Officer Alonso provided this information to the prosecutor on August 1, 2017.  Id.[9]  On September 30, 2017, Alonso further informed the prosecutor that the DNA matched a third party, named Alberto Gallegos.  Id. ¶ 41.  The fact that the DNA from the blood found on the vehicle did not match plaintiff's DNA was not presented at the preliminary hearing, nor was it made available to plaintiff in advance of plaintiff's motion to dismiss

---

[8]   The specific fact that the DNA in the blood did not match plaintiff's DNA is not included in defendants' statement of undisputed facts, and plaintiff does not include evidence of this fact in its statement of disputed facts.  However, the parties appear to concede this fact in their briefs.  See MSJ at 2; OSJ at 9.

[9]   At oral argument, plaintiff suggested, for the first time, that the record did not conclusively demonstrate that Officer Alonso provided the DNA evidence to the district attorney.  The Court finds that this fact is uncontroverted.  In a sworn declaration, Officer Alonso testified that he provided the first set of DNA evidence to the prosecution on August 1, 2017.  Dkt. 35, Declaration of Gilbert Alonso, ("Alonso Decl.") ¶ 17.  When he later learned that the DNA matched a third-party, Officer Alonso testified that he provided these lab results, as well.  Id. ¶ 18.  Defendants attach the emails in which Officer Alonso shared the lab results with the prosecution.  See Id., Exs. H, I.  Plaintiff provides no evidence which controverts Officer Alonso's sworn declaration.

**CIVIL MINUTES – GENERAL**    **'O'   JS-6**

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
|---|---|---|---|
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

the case.  The parties do not explain why investigators believed that the blood found on the vehicle was related to the theft of the ice cream truck.

### D.    Plaintiff's Case is Dismissed

Plaintiff's then-defense attorney subsequently filed a motion to dismiss, under California Penal Code 995.  OSJ at 9.  On November 8, 2017, the district attorney dismissed its case against plaintiff.  MSJ at 2; OSJ at 9; Dkt. 38, Ex. 1 ("Crim. Dkt.") at 3.  Plaintiff now sues defendants, pursuant to Section 1983, for violating his constitutional rights by prosecuting plaintiff for grand theft.  Defendants move for summary judgment.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121

| CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|
| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See <u>Matsushita</u>, 475 U.S. at 587.

## IV.  DISCUSSION

Plaintiff's first § 1983 claim is premised on violations of the Fourth Amendment. Plaintiff alleges that defendants falsely arrested him, withheld exculpatory evidence, and "used investigative techniques that were so deceptive, coercive, suggestive or abusive that [defendants] knew[,] or should have known[,] . . . would yield false information." Compl. ¶ 26. The second claim for entity liability allegedly arises under <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978). <u>Id.</u> ¶ 35. The third claim for malicious prosecution arises from defendants' alleged "fil[ing of] false reports against Plaintiff Tavakoli with the intent to file said reports with the City of Los Angeles Court [sic] and to thus subject plaintiff to the filing and commencement of a groundless criminal prosecution." <u>Id.</u> ¶ 45. With regard to this claim, plaintiff alleges that defendants acted "with malice and without probable cause." <u>Id.</u> ¶ 46. Plaintiff's fourth claim alleges a violation of the Bane Act, and plaintiff alleges that he "brings this cause of action based upon Defendants [sic] violation of their [sic] right of liberty, to be free of unreasonable searches and seizures, right to be free from bodily harm and other unreasonable deprivations of liberty without due process of law." <u>Id.</u> ¶ 54. Finally, plaintiff brings a claim for deprivation of liberty without due process of law and for the violation of equal protection. <u>Id.</u> ¶¶ 60–65. Plaintiff does not detail the specifics of these violations.

Defendants move for summary judgment on all claims. The Court reviews each claim and allegation in turn.

### A.  Constitutional Violations Alleged Against the Individual Defendants

#### i.  False Arrest

Plaintiff contends that he was falsely arrested because the arresting officers arrested plaintiff without a warrant. OSJ at 11–13. Plaintiff argues that "there was absolutely no reliability, whatsoever, with respect to the identifications of plaintiff. The witnesses based their identifications based on a video where the person's face was unidentifiable." <u>Id.</u> at 11. Defendants move for summary judgment on the grounds that the arresting officers had probable cause to arrest plaintiff based on the video and identifications provided by Santiago and Virula. MSJ at 6. Defendants further argue that

**CIVIL MINUTES – GENERAL**    **'O'   JS-6**

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| --- | --- | --- | --- |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

plaintiff is estopped from arguing that the officers lacked probable cause because plaintiff was held to answer following the preliminary hearing before Commissioner Lousteau. Id. at 7–9.

### a.    Requirements for Arrest

As a preliminary matter, the arresting officers were not constitutionally required to obtain a warrant before arresting plaintiff, in a public place, OSJ at 9, for a felony provided that the arresting officers possessed probable cause to arrest, United States v. Watson, 423 U.S. 411, 416–19, 423 (1976) ("[W]e decline to transform this judicial preference [for acquiring an arrest warrant] into a constitutional rule when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause[.]"); see also United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) ("Under the Fourth Amendment, a warrantless arrest requires probable cause."). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Torres v. City of Los Angeles, 548 F.3d 1197, 1206–07 (9th Cir. 2008) (quoting United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007); Beck v. Ohio, 379 U.S. 89, 91 (1964)).

### b.    Probable Cause

The Court finds that probable cause existed at the time the officers arrested plaintiff. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)). "While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, [m]ere suspicion, common rumor, or even strong reason to suspect are not enough." Torres, 548 F.3d at 1206–07 (citations and quotations omitted). Courts consider the "totality of the circumstances" assessment, and "[p]robable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Lopez, 482 F.3d at 1072 (citing Beck, 379 U.S. at 91). The inquiry focuses on "the moment the arrest was made." Orin v. Barclay, 272 F.3d 1207, 1218 (9th Cir.2001). The arresting officer's subjective intent is irrelevant because a probable cause determination employs an objective standard. Lopez, 482 F.3d at 1072.

CIVIL MINUTES – GENERAL     **'O'   JS-6**

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| --- | --- | --- | --- |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

In this case, the arresting officers acted on two positive identifications by known witnesses who had prior experience with the accused, as well as the known history between plaintiff and Santiago. Plaintiff argues that those identifications lack reliability because they identified the plaintiff from the video, which was blurry: "Here, it would be impossible for someone to have a fairly certain identification based on the video of the criminal." OSJ at 12. The Court has reviewed the video, dkt. 35-1, and it does not agree. Although the video is blurry at times, it still captures the perpetrator's build, movements, clothing, and general hairline. Additionally, while Officer Alonso testified that he could not identify plaintiff from the video, but the Court does not find that it was unreasonable for him to rely on the positive independent identifications of two individuals who were familiar with plaintiff. These identifications, coupled with the known history between plaintiff and the victim, constitutes probable cause for plaintiff's arrest.

### c.    *Collateral Estoppel*

Defendants argue that even if the Court had not found that probable cause existed at the time of plaintiff's arrest, plaintiff is barred from arguing that the arresting officers lacked probable cause when they arrested him in light of the fact that plaintiff was held to answer at his preliminary hearing, held on August 9, 2017. "Federal courts must give 'preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" Wige v. City of Los Angeles, 713 F.3d 1183, 1185 (9th Cir. 2013) (citing Allen v. McCurry, 449 U.S. 90, 96 (1980); see 28 U.S.C. § 1738)). In California, five requirements are necessary to find that collateral estoppel applies: (1) the issue sought to be relitigated must be identical to the issue decided in the earlier action; (2) the issue must have been actually litigated and (3) necessarily decided in the earlier action; (4) the earlier decision must be final and made on the merits; and (5) the party against whom issue preclusion is asserted must have been a party to the earlier action or in privity with such a party. Id. (citing Lucido v. Superior Court, 51 Cal. 3d 335, 341 (1990)). Courts have recognized that these five requirements are generally met "when courts are asked to give preclusive effect to preliminary hearing probable cause findings in subsequent civil actions for false arrest and malicious prosecution." Id.

The Court has reviewed the transcript of the preliminary hearing and has considered the undisputed facts on the record. Based on this, the Court finds that the requirements for collateral estoppel are met in this case. First, with regard to the identity of the issues, "[t]he quantum of evidence required to support a warrantless arrest is the same as the quantum of evidence required to hold the defendant to stand trial."

**CIVIL MINUTES – GENERAL**     **'O'   JS-6**

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. |

McCutchen v. City of Montclair, 73 Cal. App. 4th 1138, 1146 (1999).[10]  Accordingly, "so long as the evidence known to the arresting officers is not materially different from the evidence presented at the preliminary hearing, "a finding of sufficiency of the evidence to require the defendant to stand trial is a finding of probable cause to arrest the defendant." Wige, 713 F.3d at 1185–86 (citing McCutchen, 87 Cal. Rptr. 2d at 100; Haupt v. Dillard, 17 F.3d 285, 289 (9th Cir. 1994)).  The Ninth Circuit has recognized only two exceptions to this identity of issues test: first, issue preclusion does not apply when additional evidence, which was not available to the arresting officers at the time of the arrest, is presented at the preliminary hearing. Id. at 1186.  Similarly, issue preclusion does not apply where a plaintiff contends that the arresting officers lied, fabricated evidence, or intentionally concealed exculpatory evidence at the preliminary hearing.  Id.; see also Awabdy v. City of Adelanto, 368 F.3d 1062, 1068 (9th Cir. 2004) ("[C]ollateral estoppel does not apply when the decision to hold a defendant to answer was made on the basis of fabricated evidence presented at the preliminary hearing or as the result of other wrongful conduct by state or local officials.").

Plaintiff argues that there is no identity of issues here because the fact that the DNA from the blood found on the truck did not match plaintiff's DNA was not presented at the preliminary hearing.  OSJ at 21.  However, this information was unknown to the arresting officers at the time of the arrest.  The arresting officers arrested plaintiff on April 2, 2017.  DSF ¶ 5.  Alonso did not learn about the DNA mismatch until July 27, 2017—over three months after the arrest.  MSJ at 15.  Accordingly, at the time of the arrest, the arresting officers knew only of the video, the positive identification of plaintiff by two individuals, and of the past history between plaintiff and Santiago.  DSF ¶ 4.  This was the same evidence presented to the Commissioner at the preliminary hearing, and this was the same evidence that led the Commission to hold plaintiff to answer because she found probable cause.  Id. ¶¶ 10–35.  Accordingly, for the purposes of determining whether the arresting officers had probable cause to arrest plaintiff, the Court finds that the identity of issues requirement is met.

---

[10]     A more recent California Court of Appeal opinion disagreed with the reasoning of McCutchen.  See Schmidlin v. City of Palo Alto, 157 Cal. App. 4th 728 (2007).  However, the Ninth Circuit has indicated that it follows "McCutchen as a guide for how the California Supreme Court would decide this case," because Schmidlin "did not involve a preliminary hearing determination of probable cause."  Patterson v. City of Yuba City, 748 F. App'x 120, 121 n.1 (9th Cir. 2018).

Plaintiff does not contest that the issue was necessarily decided in the earlier action, that the earlier decision was final and made on the merits, nor that plaintiff was a party to the earlier action.  However, plaintiff argues that he did not have a full and fair opportunity to litigate the issue of probable cause because exculpatory evidence—the DNA evidence—was withheld from plaintiff.  OSJ at 21 (citing Allen, 449 U.S. at 101 ("Collateral estoppel does not apply where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.")).  Plaintiff's argument has no merit.  Neither the Supreme Court nor the Ninth Circuit have established that the prosecution must disclose exculpatory evidence to an accused defendant in advance of a preliminary hearing.  See Jaffe v. Brown, 473 Fed. Appx. 557, 559 (9th Cir. 2012) (unpublished) ("[E]xisting Supreme Court case law does not clearly establish that the prosecution was required to disclose the [exculpatory evidence] before, rather than after, [the petitioner's] preliminary hearing.").  In light of this, other district courts in this circuit have declined to find that a prosecutor has conducted misconduct by failing to disclose exculpatory evidence prior to a preliminary hearing.  See, e.g., Jordan v. Cano, No. CV 16-04975-JVS (AS), 2017 WL 1074364, at *25 (C.D. Cal. Feb. 15, 2017).[11]  With the evidence available at the

---

[11]     Plaintiff also cites United States v. Ortiz-Hernandez, 427 F.3d 567 (2004), to argue that "officers have obligations to society to act on information that dissipates probable cause." OSJ at 12.  In that case, the Ninth Circuit held that, "[i]f probable cause is established at any early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity.  A person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated." Ortiz-Hernandez, 427 F.3d at 574.  That case is inapposite to the facts here.  Officer Alonso formed his belief that probable cause to arrest plaintiff existed based on the information provided by Santiago and Virula.  DSF ¶¶ 3–4, 32–35.  Only after Officer Alonso had arrested plaintiff did Officer Alonso learn of the DNA evidence.  MSJ at 15; OSJ at 9.  At that point, plaintiff was no longer in custody, OSJ at 9, and the district attorney had already filed charges against plaintiff, DSF ¶ 9.  Alonso presented that evidence to the prosecution.  Id. ¶¶ 40–41.  This satisfied Officer Alonso's obligations under Brady.  See Section C(i).  Additionally, "once a prosecutor has filed charges, the arresting officers will generally be found immune." Ewing v. City of Stockton, 588 F.3d 1218, 1232 (9th Cir. 2009) (explaining that Smiddy v. Varney, 665 F.2d 261 (9th Cir. 1981), limits an officer's liability under Ortiz-Hernandez); see Section E.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

preliminary hearing—which was the same evidence which was available to the arresting officers at the time of the arrest—the record demonstrates that plaintiff's then-defense counsel vigorously litigated plaintiff's case at the preliminary hearing.  He cross-examined the prosecution's witnesses, argued that the video was blurry and inconclusive, and sought dismissal of the case based on insufficiency of the evidence.  See Transc. at 17:13–24:4; 28:24–30:11; 31:3–31:16.  Plaintiff's then-defense counsel did not convince the Commissioner to dismiss the case.  The Court finds that plaintiff's defense counsel's representation of plaintiff satisfies the requirement that the issue be "actually litigated."

In sum, having found that all five requirements for collateral estoppel are met for the issue of probable cause, the Court concludes plaintiff is collaterally estopped from arguing that the arresting officers lacked probable cause when they arrested plaintiff on April 2, 2017.  The fact that the Commissioner held plaintiff to answer is conclusive on this issue.[12]

### ii.    Withholding of Exculpatory Evidence

Plaintiff also argues that defendants violated his fourth amendment right by withholding exculpatory evidence.  Defendants move for summary judgment on both claims.

### a.    *Withholding Evidence Under Brady*

In Brady v. Maryland, the Supreme Court held that the government must disclose evidence that is materially favorable to an accused criminal defendant.  373 U.S. 82 (1963).  There are three elements for a § 1983 claim, premised on a Brady violation:  the "evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281–82 (1999).  In Tennison v. City and County of San Francisco, 570 F.3d 1078 (2009), the Ninth Circuit held that a plaintiff may bring a Section 1983 claim for a

---

[12]    Plaintiff alleges that defendants "made a warrantless, non-consensual search of Plaintiff's person without justification" at the time that he was arrested.  Compl. ¶ 46.  The parties do not submit any argument regarding this alleged search.  Moreover, the record only demonstrates that defendants arrested plaintiff.  Accordingly, to the extent that plaintiff alleges a claim for an unlawful search, summary judgment for the defendants is **GRANTED** for this claim, as well.

**CIVIL MINUTES – GENERAL**        **'O'   JS-6**

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
|---|---|---|---|
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

Brady violation against police officers. To state such a claim against a police officer, "a § 1983 plaintiff must show that police officers acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." Id. at 1088.

Plaintiff contends that Brady applies in his case because "plaintiff was most definitely harmed" by not knowing about the DNA evidence found on the stolen vehicle. OSJ at 22. Defendants respond that plaintiff's alleged Brady violation fails as a matter of law. Defendants argue that they, as police officers, satisfied their Brady obligations by disclosing all evidence—including the DNA evidence—to the prosecution. RSJ at 8.

Under Tennison, police officers violate Brady if they "withhold[] evidence *from prosecutors*." Tennison, 570 F.3d at 1088. To be liable under Brady, police officers must further "act with deliberate indifference to or reckless disregard for" a defendant's rights or for the truth. Id. However, where, as here, a police officer provides the prosecution with the exculpatory information he uncovers, a police officer's obligations under Brady end. Martin A. Schwartz, Sec. 1983 Litig. Claims & Defenses § 3.23 (4th ed. 2019) ("A § 1983 Brady claim may be asserted against a police officer based upon the officer's failure to disclose exculpatory material to the prosecutor."). Here, Officer Alonso received notice that the DNA of the blood found on the truck did not match plaintiff's DNA on July 27. 2017. MSJ at 2. On August 1, 2017, he disclosed this information to the district attorney. DSF ¶ 40. The district attorney chose not to present this evidence at the preliminary hearing, but this has no bearing on defendants' obligations.[13] Brady does not require police officers to provide any evidence directly to

---

[13]    Importantly, while plaintiff does not allege claims against the prosecutors in this case, the Court notes that, if he did, those claims would also fail. As already mentioned, neither the Supreme Court nor the Ninth Circuit have held that a prosecutor is required to disclose exculpatory evidence in advance of a preliminary hearing. See Jaffe, 473 Fed. Appx. at 559 (unpublished). To the contrary, the Supreme Court has explained that, "strictly speaking, there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different *verdict*." Strickler, 527 U.S. at 281 (emphasis added). Accordingly, although the Ninth Circuit has reserved ruling on whether a defendant who is not convicted may bring a § 1983 Brady claim, see Smith v. Almada, 640 F.3d 931, 841 (9th Cir. 2014), courts have widely held that where a criminal case does not proceed to trial, a plaintiff cannot bring a Brady claim pursuant to § 1983, Martin A. Schwartz, Sec. 1983 Litig. Claims & Defenses § 3.23 (4th ed. 2019) ("Because Brady is a fair trial right, the

CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. |

the defense.  Accordingly, the Court **GRANTS** defendants' motion for summary judgment for plaintiff's alleged <u>Brady</u> violation, alleged against the individual officers.

### b.   *Whether the Alleged Withholding of Evidence Can Constitute a Violation of Due Process*

In <u>Tatum v. Moody</u>, 768 F.3d 806 ( 9th Cir. 2014), the Ninth Circuit also recognized that where "investigating officers, acting with deliberate indifference or reckless disregard for a suspect's right to freedom from unjustified loss of liberty, fail to disclose potentially dispositive exculpatory evidence to the prosecutors, leading to the lengthy detention of an innocent man, they violate the due process guarantees of the Fourteenth Amendment." <u>Id.</u> at 816.  This due process guarantee is separate from a <u>Brady</u> violation, and it applies even if a criminal defendant's case never proceeds to trial. <u>Id.</u>  In <u>Tatum</u>, police officers withheld highly material evidence from prosecutors for over two years—during which the criminal defendant endured pretrial incarceration.  <u>Id.</u> at 809.  Once the prosecution learned of the withheld evidence, it dismissed the case.  <u>Id.</u> at 809–10.  When the criminal defendant subsequently brought a § 1983 case, the Ninth Circuit found that this concealing of evidence violated the plaintiff's right to due process. <u>Id.</u> at 821.  Importantly, however, the Ninth Circuit "emphasize[d] the narrowness of the constitutional rule. . . , which is restricted to detentions of (1) unusual length, (2) caused by the investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors, and (3) due to conduct that is culpable in that the officers understood the risks to the plaintiff's rights from withholding the information or were completely indifferent to those risks." <u>Id.</u> at 819–20.

This case meets none of the narrow <u>Tatum</u> requirements.  There is no unusual detention in this case.  Plaintiff was held in jail for less than twenty-four hours after his arrest.  OSJ at 9.  In addition, no part of plaintiff's detention was caused by an investigating officer's failure to disclose dispositive, exculpatory evidence to the prosecutors.  By the time that Officer Alonso learned of the DNA evidence, plaintiff had been released on bail for over three months.  OSJ at 9; RSJ at 1.  The DNA evidence was also not highly dispositive; the record does not indicate that the blood found on the stolen

great weight of lower court authority holds that a criminal defendant who did not have a criminal trial because the criminal charges were dropped cannot assert a § 1983 *Brady* claim.").  Furthermore, a plaintiff could not bring a <u>Brady</u> claim against the prosecution because they are shielded by absolute prosecutorial immunity.  <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430-32 (1976).

**CIVIL MINUTES – GENERAL**      **'O'**    **JS-6**

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
|---|---|---|---|
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

truck was related in any way to the theft. Finally, there is no indication that the police officer defendants were cognizant or indifferent to the risks to plaintiff's rights. Accordingly, the Court grants summary judgment on plaintiff's claim that the individual police officers violated his due process rights by withholding exculpatory DNA evidence. See Hernandez v. Kennedy, 595 F. App'x 673, 676 (9th Cir. 2014) (unpublished) (declining to extend Tatum to a case where "the one night detention did not compare with the more than two years in Tatum, and the evidence [the officer] chose not to disclose . . . did not show that [the criminal defendant] was innocent").

### iii. Fabrication of Evidence

Plaintiff also claims that defendants fabricated evidence in his case. "[T]here is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government." Caldwell v. City & Cty. of San Francisco, 889 F.3d 1105, 1112 (9th Cir. 2018) (citing Devereaux v. Perez, 218 F.3d 1045, 1074–75 (9th Cir. 2000)). To bring a claim for fabrication of evidence, "a § 1983 plaintiff need not be convicted on the basis of the fabricated evidence to have suffered a deprivation of liberty—being criminally charged is enough." Id. To assert a claim for fabrication of evidence, "the plaintiff must first point to evidence he contends the government deliberately fabricated." Bradford v. Scherschligt, 803 F.3d 382, 386 (9th Cir. 2015). Then, the plaintiff may employ one of two "circumstantial methods" to demonstrate that the fabrication was "deliberate" :

> The first method is to demonstrate that the defendant continued his investigation of the plaintiff even though he knew or should have known that the plaintiff was innocent. The second method is to demonstrate that the defendant used "investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information."

Id. (citing Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (internal citations omitted).

Plaintiff appears to premise his claim for the fabrication of evidence on Officer Alonso's use of a photographic lineup, from which Santiago and Virula identified plaintiff. Plaintiff argues that "utilizing six-pack lineups when on [sic] witnesses when the witnesses could hardly see the face of the suspect is a technique that would absolutely yield false information and results." OSJ at 14. Plaintiff further argues that "one or more officer [sic] knew plaintiff was innocent and kept investigating him . . . because DNA matched a different person and plaintiff continued to be prosecuted." Id. at 13.

**CIVIL MINUTES – GENERAL**  ‘O’  JS-6

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
|---|---|---|---|
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

Defendants move for summary judgment on the grounds that plaintiff has not demonstrated that defendants knew or should have known that plaintiff was innocent when they investigated him.  MSJ at 14.

The Court finds that plaintiff does not satisfy the first prong of showing that any evidence was deliberately fabricated.  At the time Officer Alonso conducted the photographic lineup, he had not yet received the DNA results.  DSF ¶ 40.  Accordingly, even assuming that the DNA evidence were dispositive of plaintiff's innocence, Officer Alonso would have had no reason to suspect plaintiff's innocence, much less know of it, at the time he showed the photographic lineup to Santiago and Virula.  By the time that Officer Alonso learned of the DNA evidence, the prosecution had already filed charges against plaintiff, and Officer Alonso had alerted the prosecution to the new DNA evidence.  Id. ¶¶ 40–41.

Viewing the facts in the light most favorable to plaintiff, the Court also finds that nothing in the record supports a finding that the "investigative techniques [employed] . . . were so coercive and abusive that [Officer Alonso] knew or should have known that those techniques would yield false information."  Bradford, 803 F.3d at 386.  The Court has reviewed copies of the photographic lineup.  See Dkt. 45-2, Ex. 3 ("Lineup").[14]  The photographic lineup that Officer Alonso employed included plaintiff's photograph along with five other individuals with similar features and coloring.  Id.  The Court has also reviewed Officer Alonso's sworn testimony, given at the preliminary hearing when he described the process in which he used the lineup.  It appears that Officer Alonso employed the photographic lineup to confirm the identity of the man who the witnesses identified in the video because there was confusion about plaintiff's first name.  DSF ¶¶ 34–35.  Indeed, in response to plaintiff's then-defense counsel's questions regarding why Officer Alonso conducted the photographic lineup, Officer Alonso explained that, "[d]uring the course of my investigation, the victim kept referring to an individual named as [sic] Paul.  When I made contact with the Sergeant from the West Valley Area, he gave me a full name, which is Payam Tavakoli.  So I wanted to make sure we were

---

[14]     Defendants object to plaintiff's inclusion of the photographic lineup as hearsay.  OBJ at 2.  Because the Court reviews only the photographs, and not any markings on the documents, this objection is **overruled**.  Photographs do not constitute statements under Federal Rule of Evidence 801.  Fed. R. Evid. 801(a) ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.") Fed. R. Evid. 801.  The evidence is also relevant because plaintiff asserts that it was fabricated, which is the basis for his claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. |

talking about the same individual." Transc. 29:01–29:07. Accordingly, Officer Alonso employed the photographic lineups to ensure that the person Santiago and Virula called "Paul"—who was the person they had previously met, and who was the person they identified in the video—was indeed plaintiff. DSF ¶ 35. The photographic lineup was not employed to suggest plaintiff's identity or involvement with the theft.

### iv.   Malicious Prosecution

Plaintiff also claims that he was maliciously prosecuted in violation of the constitution. "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" Awabdy, 368 F.3d at 1066 (quoting Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir.1995)). A plaintiff may bring malicious prosecution charges against anyone who has "wrongfully caused his prosecution"—not simply against prosecutors. Smith, 640 F.3d at 938 (citing Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126–27 (9th Cir. 2002)).

When a malicious prosecution claim is filed against police officers, their liability is generally limited due to the presumption of prosecutorial independence. Awabdy, 368 F.3d at 1067 (citing Smiddy, 665 F.2d at 266–68) ("Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings."). As the Ninth Circuit explained in Smiddy, this presumption "is just because the other actors who decided to continue to hold [the criminal defendant], the district attorney and the municipal court judge, are absolutely immune from liability under section 1983." 665 F.2d at 267. However, this presumption is overcome if the accused "state or local officials . . . improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." Awabdy, 368 F.3d at 1067; but see Newman v. Cty. of Orange, 457 F.3d 991, 993 (9th Cir. 2006) (holding that "a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment"). "The plaintiff bears the burden of producing evidence to rebut" the presumption of independent judgment. Id. at 993.

CIVIL MINUTES – GENERAL        'O'   JS-6

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

Plaintiff argues that the facts illustrate that the individual defendants maliciously prosecuted him because "probable cause was absolutely lacking because the identifications completely lacked any indicia of reliability. Further, it is clear the Defendant Alonso continued to cause the prosecution of Plaintiff even after it became clear by way of DNA evidence that Plaintiff was not the suspect." OSJ at 14. Defendants move for summary judgment on plaintiff's malicious prosecution claim. They argue that the Commissioner's finding that probable cause existed to hold plaintiff to answer estops plaintiff from prevailing on this claim, and defendants contend that plaintiff "cannot establish the element of 'malice.'" MSJ at 10.

The Court grants summary judgment to the individual officers on plaintiff's malicious prosecution claim. Summary judgment is proper on multiple grounds. First, the Commissioner's probable cause finding at the preliminary hearing bars plaintiff from arguing that probable cause was lacking in this case because all five issue preclusion requirements are met. See Section IV (A)(ii). Next, viewing the evidence in the light most favorable to plaintiff, there is no suggestion that the police officer defendants acted with malice in this case. Indeed, as defendants argue, Officer Alonso was unfamiliar with plaintiff and the witnesses who were interviewed in this case, and there is no suggestion that he was wrongfully motivated when he investigated the crime at issue in this case. DSF ¶ 38; MSJ at 10. Plaintiff also fails to establish that defendants intended to deprive him of a specific constitutional right, which is a necessary element of a constitutional malicious prosecution claim. See Freeman, 68 F.3d at 1189 ("Malicious prosecution, by itself, does not constitute a due process violation; to prevail [a plaintiff] must show that the defendants prosecuted her with malice and without probable cause, and that they did so *for the purpose of denying her equal protection or another specific constitutional right*.") (emphasis added). For these reasons alone, summary judgment is appropriate.

Notwithstanding these facts, however, the parties agree that Officer "Alonso presented the case to the District Attorney's Office and did not threaten, attempt to threaten, coerce or attempt to coerce the prosecutor who reviewed the case for filing consideration. Also, Alonso did not make any promises to the prosecutor in exchange for a decision to file charges against [plaintiff]." DSF ¶ 8. Officer Alonso also disclosed the DNA exculpatory evidence to the prosecutors upon his receipt of it. Id. ¶¶ 40–41. Accordingly, even if plaintiff established a claim for malicious prosecution, Smiddy would prevent any liability based on the presumption that the prosecution independently chose to file charges in this case. Smiddy, 665 F.2d at 266 ("Filing of a criminal complaint immunizes investigating officers such as the appellants from damages suffered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. |

thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time."). For the foregoing reasons, the Court grants summary judgment for defendants on plaintiff's malicious prosecution claim.

### v.    Judicial Deception

In his opposition to defendants' motion for summary judgment, plaintiff argues that he has a claim for judicial deception. As the basis for his claim, plaintiff argues that "defendant Alonso recklessly disregarded the fact that the witnesses did not get a good viewing of the suspect." OSJ at 15. This claim for judicial deception was not expressly alleged in plaintiff's complaint, but in their reply, defendants still argue that summary judgment is appropriate on this claim. Citing Hervey v. Estes, 65 F.3d 784 (9th Cir. 1995), defendants contend that plaintiff cannot allege a claim for judicial deception because such a claim is premised on applications for a warrant. RSJ at 6. Here, plaintiff was arrested based on probable cause—not upon the issuance of an arrest warrant. Id.; OSJ at 9.

"For [a plaintiff's] judicial deception claim to survive summary judgment, [a plaintiff] 'must 1) make a substantial showing of [the officers'] deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the searches and arrest would not have occurred.'" Chism v. Washington State, 661 F.3d 380, 386 (9th Cir. 2011). In this case, there was no search or arrest warrant issued. Rather, the officers had probable cause to arrest based on the positive identifications they received from Santiago and Virula. Plaintiff's claim for judicial deception therefore fails. The Court **GRANTS** summary judgment to defendants for this claim.

### vi.    Due Process and Equal Protection Allegations

Plaintiff's fifth claim alleges a deprivation of liberty without due process and a violation of his right to equal protection. Compl. ¶¶ 60–66. Plaintiff does not specify in what ways defendants violated plaintiff's right to equal protection, but defendants represent that plaintiff has agreed to dismiss this claim. MSJ at 15. At oral argument, counsel for plaintiff failed to state any grounds for an equal protection claim. The Court accordingly **GRANTS** summary judgment, in favor of defendants, on this claim, as well.

In their briefing, the parties do not expressly discuss plaintiff's fifth claim to the extent that it is premised on a due process violation. However, in his complaint, plaintiff alleges that "[d]efendant officers, acting under color of law, produced police reports

**CIVIL MINUTES – GENERAL**       **'O'   JS-6**

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
|---|---|---|---|
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

which unjustifiably identified Plaintiff as the criminal causing charges to be filed when there was not probable cause to file charge." Id. ¶ 61.  As already discussed, plaintiff is barred from arguing that officers lacked probable cause to arrest him because that issue was already litigated before the Commissioner, who found that probable cause existed. See Section IV (A)(ii).

\*       \*       \*       \*

In conclusion, it is undisputed that the Commissioner found that there was probable cause to hold plaintiff to answer.  DSF ¶12.  In this case, that finding indicates that there was probable cause to arrest.  It is also undisputed that plaintiff spent less than 24 hours in jail.  OSJ at 9; RSJ at 1.  It is undisputed that the police disclosed the exculpating DNA evidence that they received to the prosecution.  DSF ¶¶ 40–41.  It is undisputed that the police did not threaten or coerce the prosecution into filing charges against plaintiff, which supports the presumption that the prosecution employed independent judgement in bringing this case against plaintiff.  Id. ¶8.  Finally, it is undisputed that the prosecution dismissed this case seven months after they filed it.  MSJ at 2; OSJ at 9.  Viewing these facts in the light most favorable to plaintiff, the record does not support a finding of liability.  For this reason, the Court **GRANTS** summary judgment for defendants with regard to plaintiff's individual claims.

### B.    <u>Monell</u> Liability

Local government entities, including counties and their sheriff's departments, may be sued directly under § 1983 when their policies or customs are the moving force behind a constitutional violation.  See Monell, 436 U.S. at 690; see also Rivera v. County of Los Angeles, 745 F.3d 384, 389 (9th Cir. 2014).  To establish liability for governmental entities under Monell, "a plaintiff must prove (1) that [he] possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quotation marks omitted).  To establish Section 1983 municipal liability, [a] plaintiff must therefore satisfy one of three conditions: "(1) prove a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. |

governmental policy; or (3) prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted).

Here, the Court has granted summary judgment in favor of defendants on all of plaintiff's claims. "[M]unicipalities cannot be held liable when the individual police officer has inflicted no constitutional injury." Yousefian v. City of Glendale, 779 F.3d 1010, 1016 (9th Cir. 2015). Accordingly, having concluded that the individual defendants did not cause plaintiff any constitutional harm, the Court hereby **GRANTS** summary judgment for defendants on plaintiff's Monell claim.[15]

## C.   Bane Act

California Civil Code Section 52.1 (the "Bane Act") establishes a private right of action for damages and other relief against a person who interferes, or attempts to interfere, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of his or her constitutional or other legal rights. Cal. Civ. Code § 52.1(a),(b). There are two distinct elements to a Section 52.1 claim: (1) intentional interference or attempted interference with a state or federal constitutional or legal right; and (2) interference or attempted interference by threat, intimidation, or coercion. See Allen v. City of Sacramento, 234 Cal. App. 4th 41, 67 (2015). The statute requires a showing of threatening conduct independent from the alleged interference or violation of a civil right. See Shoyoye v. Cnty. of Los Angeles, 203 Cal. App. 4th 947, 959 (2012); see also Allen, 234 Cal. App. 4th at 41. Additionally, "where an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." Cornell v. City &

---

[15]      In his opposition brief, plaintiff argues that he has retained an expert, who has concluded that the officer defendants violated an LAPD consent decree, which may serve as a basis for Monell liability. OSJ at 19. Plaintiff does not explain how an individual officer's alleged failure to adhere to a city policy—which is illustrated by a consent decree—would establish that the city's policy caused a constitutional violation. Notwithstanding this confusion, while the Ninth Circuit has not ruled on the matter, courts routinely hold that consent decrees may not be enforced under § 1983. See Martin A. Schwartz, Sec. 1983 Litig. Claims & Defenses § 3.02 (4th ed. 2019) (listing cases).

## CIVIL MINUTES – GENERAL    'O'   JS-6

| Case No. | 2:18–CV–5410– CAS (GJSx) | Date | March 18, 2019 |
|----------|--------------------------|------|----------------|
| Title | PAYAM TAVAKOLI V. CITY OF LOS ANGELES ET AL. | | |

Cty. of San Francisco, 17 Cal. App. 5th 766, 801–02 (Ct. App. 2017), as modified (Nov. 17, 2017), review denied (Feb. 28, 2018).

Plaintiff alleges that his Bane Act claim arises from, *inter alia*, violations of his right to liberty, his right to be free of unreasonable searches and seizures, from the withholding of exculpatory information, and from violations of "his right to be free from bodily harm and other unreasonable deprivations of liberty without due process of law." Compl. ¶¶ 54, 56. However, the Court has already concluded that defendants did not violate plaintiff's constitutional rights. Additionally, as defendants argue, "absent from the record is any evidence of 'threats,' 'intimidation' or 'coercions,' as are required by Section 52.1." MSJ at 17. Aside from the time that defendants arrested plaintiff, there is no indication that they otherwise interacted with him. At the time of the arrest, the officers acted upon probable cause to arrest, and there is no evidence that they exerted unreasonable force or threatened plaintiff. Accordingly, the Court hereby **GRANTS** summary judgment for defendants on this claim.

## V.    CONCLUSION

In accordance with the foregoing, the Court hereby **GRANTS** summary judgment to the defendants.[16] The Court **DENIES** defendants' motion for judgment on the pleadings as moot.

IT IS SO ORDERED.

|  |  |  | 00 | : | 12 |
|--|--|--|----|---|----|
|  | Initials of Preparer | | | CMJ | |

---

[16]    Because the Court does not rely on the exhibits, the Court **DENIES** defendants' remaining evidentiary objections as moot.